**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALASKA LABORERS-EMPLOYERS RETIREMENT FUND; AUGUSTINE J. MERRICK II AND STEVE GERAGHTY IN THEIR CAPACITY AS FIDUCIARIES OF THE ALASKA LABORERS-EMPLOYERS RETIREMENT FUND;<br><br>Plaintiffs,<br><br>v.<br><br>ALLIANZ GLOBAL INVESTORS U.S. LLC; ALLIANZ GLOBAL INVESTORS U.S. HOLDINGS LLC; ALLIANZ ASSET MANAGEMENT OF AMERICA L.P.; ALLIANZ ASSET MANAGEMENT OF AMERICA LLC; PFP HOLDINGS INC.; ALLIANZ ASSET MANAGEMENT OF AMERICA HOLDINGS INC.; ALLIANZ OF AMERICA INC.; ALLIANZ ASSET MANAGEMENT GMBH; ALLIANZ SE;<br><br>Defendants. | Case No. 1:21-cv-01879<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**ECF CASE** |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     JURISDICTION AND VENUE ........................................................................... 4

III.    PARTIES ............................................................................................................. 5

        A.     Plaintiffs ................................................................................................. 5

        B.     Defendants .............................................................................................. 6

IV.     Fiduciary Status of AllianzGI ......................................................................... 11

V.      FACTUAL ALLEGATIONS ............................................................................ 12

        A.     AllianzGI Structured Alpha Funds ...................................................... 12

        B.     The Alaska Laborers Plan's Investment in the Allianz 350 Fund ...... 15

        C.     AllianzGI Abandoned the Hedged and Market Neutral Strategy It
               Had Represented to Investors ............................................................... 16

        D.     AllianzGI's Attempts to Explain its Actions Ring Hollow ................. 21

VI.     CLAIMS FOR RELIEF .................................................................................... 23

VII.    PRAYER FOR RELIEF .................................................................................... 39

VIII.   JURY DEMAND ............................................................................................... 40

Plaintiffs Alaska Laborers-Employers Retirement Fund ("Alaska Laborers Plan" or "Plan") and Augustine J. Merrick II and Steve Geraghty, in their capacities as trustees and fiduciaries of the Alaska Laborers Plan, bring the following Complaint against Defendant Allianz Global Investors U.S. LLC ("AllianzGI") and the other Allianz Defendants defined below (collectively, "Defendants").  Plaintiffs do so in order to remedy devastating losses suffered by the Plan as a result of AllianzGI's misstatements, acts and omissions.

Plaintiffs assert claims under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and, alternatively, breach of common-law fiduciary duties, negligence, and breach of contract claims arising from the imprudent and disloyal management of the AllianzGI Structured Alpha Global Equity 350 LLC ("Structured Allianz 350 Fund" or "Allianz 350 Fund"), as well as claims for violations of the Securities Act of 1933, as amended (the "Securities Act"), the Securities Exchange Act of 1934, as amended (the "Exchange Act"), the Alaska Securities Act, and claims for common law fraud and negligent misrepresentation arising out of false and misleading statements and omissions made by Defendants in connection with the Alaska Laborers Plan's investments in the Allianz 350 Fund.

## I.      INTRODUCTION

1.      In marketing the Structured Allianz 350 Fund to Plaintiffs, AllianzGI made numerous specific statements regarding the Fund and its "Structured Alpha" strategy generally, the investment objectives and strategies of the Allianz 350 Fund and the strategy generally, and the risks and anticipated returns of the Allianz 350 Fund and the strategy generally.  AllianzGI assured Plaintiffs that the Structured Allianz 350 Fund would be managed so as to provide "absolute returns in any environment," including a "market crash," by utilizing comprehensive "risk-monitoring tactics."  But AllianzGI failed to follow its stated investment strategy.  Instead,

it imprudently and disloyally managed the Structured Allianz 350 Fund in a manner that exposed the Alaska Laborers Plan and other investors to losses that they had been assured they would be protected against.  By March 2020, AllianzGI's actions had caused the Plan to suffer losses of over 20 million dollars.  AllianzGI's actions were contrary to numerous assurances given to the Alaska Laborers Plan in disclosure documents and other materials provided in connection with the Alaska Laborers Plan's decisions to invest, and constituted breaches of AllianzGI's fiduciary duties under ERISA or the common law.

2. AllianzGI represented that its Structured Alpha Portfolio (of which the Structured Allianz 350 Fund was a part) would pursue a "market-neutral" strategy, *i.e.,* one in which the Structured Alpha Portfolio would "[n]ever make a forecast on the direction of equities or volatility."  To that end, the Structured Alpha Portfolio was to be invested in equity indices to replicate the performance of a given benchmark (the "beta" component), while simultaneously pursuing an actively managed options trading strategy that aimed to capture an equity insurance risk premium (the "alpha" component).  The Structured Alpha Portfolio's "alpha" component would, AllianzGI represented, provide investors with downside protection and an upside in markets that were "up and down, smooth or volatile."

3. The Structured Alpha Portfolio's investment strategy required active portfolio management and close monitoring to ensure the portfolio was properly protected against a market crash and positioned to be both short and long volatility as market conditions changed—a portfolio construction that necessarily required stringent risk management policies and protocols to ensure that the strategy worked as required by the contracts and related materials that defined AllianzGI's duties. To do so consistent with the Structured Alpha Portfolio's investment mandate, AllianzGI purportedly performed "tail-risk protection, risk reduction, and/or volatility

smoothing" based on "analysis of historical movements of broad-based US indices, as well as rigorous scenario testing," and was required to stress test the portfolio under the very kinds of market conditions that occurred in February and March 2020.

4.     A key feature of the strategy's risk management was downside risk protections "designed for tail risk protection, not for outperformance potential."  In order to obtain such protection, AllianzGI committed to *buy and maintain* put options in a greater quantity than it sold to "protect the portfolio in the event of a market crash/closure" and further committed that options were to be "laddered for various market outcomes to the downside," ensuring protection in a wide range of negative scenarios.

5.     Rather than *buying and maintaining* put options in a greater quantity than it sold, AllianzGI caused the Structured Alpha Portfolio to become a net seller of put options.  This conflicted with the Structured Alpha Portfolio's stated "market neutral" mandate and resulted in substantial losses to the Allianz 350 Fund.

6.     In February 2020, Mohammed El-Erian, chief economist of AllianzSE (a corporate affiliate of AllianzGI as described below) predicted that investor uncertainty concerning the economic impact of the coronavirus would "cascade throughout the global economy."  He warned of the severity of the situation and publicly counseled that "we should try and resist our inclination to buy the dip."

7.     The type of market dislocation predicted by Mr. El-Erian was exactly the type of circumstance that AllianzGI had represented the Allianz 350 Fund to be designed to withstand. But contrary to those representations, AllianzGI did not have and/or did not maintain positions in place to protect against losses in the event of such a market downturn.

8.    On March 25, 2020, AllianzGI announced that it was forced to liquidate two other funds in the Structured Alpha portfolio, the Structured Alpha 1000 and the Structured Alpha 1000 Plus funds.  Analysts and insurers quickly began to downgrade AllianzGI's other Structured Alpha Funds.

9.    By the end of March, the Allianz 350 Fund was down nearly 56%, underperforming its benchmark by 40%.

10.    As discussed herein, the risky portfolio positioning—that was contrary to the Structured Alpha Portfolio's stated investment mandate—was undertaken, at least in part, to preserve AllianzGI's performance fees.  AllianzGI knew by February, 2020 that it would be hard to earn any income from the Funds for, at a minimum, the first quarter of 2020.  The Structured Alpha Funds' fee structure would have made it impossible for AllianzGI to earn any performance fees for its management of the Structured Alpha Funds, including the Allianz 350 Fund, if the losses experienced in February were not recovered by the end of March.

11.    As discussed herein, Defendant AllianzGI did not carry out its promised downside protection strategy and took actions to benefit itself rather than its clients—including the Alaska Laborers Plan.  As a result, the Alaska Laborers Plan has suffered losses in excess of $20 million.

## II.    JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

13.    ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), provides for nationwide service of process.  Defendants are residents of the United States and subject to service in the United States, and this Court therefore has personal jurisdiction over them.

14.     This Court also has jurisdiction over the claims for relief asserted in this Complaint pursuant to 28 U.S.C. § 1132(a)(3) (diversity of citizenship) because the dispute is between citizens of Alaska and citizens of other U.S. states and Germany and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

15.     This Court also has subject matter jurisdiction over this action under Section 27 of the Exchange Act, 15 U.S.C. § 78aa(a) and 28 U.S.C. § 1331.

16.     This Court also therefore has supplemental jurisdiction over Plaintiffs' common law claims.

17.     Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant AllianzGI resides in this district and some or all of the fiduciary breaches for which relief is sought occurred in this district.

18.     Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because under the agreements governing the Alaska Laborers Plan's investments in the Allianz 350 Fund, the parties consented to submit to the jurisdiction of the United State District Court for the Southern District of New York "in the event of any dispute arising out of the terms and conditions" of those agreements.

### III.     PARTIES

**A.     Plaintiffs**

19.     Plaintiff Alaska Laborers-Employers Retirement Fund is a Taft-Hartley trust fund and multiemployer benefit plan based in Alaska. It is an employee pension benefit plan and an employee benefit plan within the meanings of ERISA §§3(2) and 3(3), 29 U.S.C. §§1002(2) and (3).

20.    Plaintiff Augustine J. Merrick II is Chair of the Alaska Laborers Plan's Board of Trustees and a fiduciary of the Plan within the meaning of ERISA §3(21)(a), 29 U.S.C. §1002(21)(a).  Plaintiff Merrick resides in Eagle River, Alaska.

21.    Plaintiff Steve Geraghty is Secretary of the Alaska Laborers Plan's Board of Trustees and a fiduciary of the Plan within the meaning of ERISA §3(21)(a), 29 U.S.C. §1002(21)(a).  Plaintiff Geraghty resides in Fairbanks, Alaska.

22.    Plaintiffs Merrick and Geraghty bring their claims on behalf of the Alaska Laborers Plan as described herein.

**B.    Defendants**

23.    Defendant Allianz Global Investors U.S. LLC ("AllianzGI") is a Delaware limited liability company and registered investment adviser with its principal place of business at 1633 Broadway, New York, New York. AllianzGI is a direct, wholly-owned subsidiary of Allianz Global Investors U.S. Holdings LLC (described below). AllianzGI is the investment manager for the Structured Alpha Funds.

24.    Defendant Allianz Global Investors U.S. Holdings LLC ("AllianzGI Holdings") is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York. AllianzGI Holdings is the direct, 100% owner of AllianzGI.

25.    Defendant Allianz Asset Management of America L.P. ("AAMA LP") is a registered investment advisory firm and a Delaware limited partnership based in Newport Beach, CA. AAMA LP is the direct, 100% owner of AllianzGI Holdings.

26.    Defendant PFP Holdings Inc. ("PFP"), a limited partner of AAMA LP, is incorporated in Delaware and has its principal place of business in Newport Beach, California.

27. Defendant Allianz Asset Management of America LLC ("AAMA LLC"), the sole general partner of AAMA LP, is a Delaware limited liability company with its principal place of business in Newport Beach, California.

28. Defendant Allianz Asset Management of America Holdings Inc. ("AAMA Holdings") is a Delaware corporation with its principal place of business in Newport Beach, California. AAMA Holdings holds a 0.1% managing interest in AAMA LLC.

29. AllianzGI, AllianzGI Holdings, AAMA LP, AAMA LLC, PFP, AAMA LLC, and AAMA Holdings are part of what Defendant and its affiliates branded the "Allianz Global Investors".

30. Defendant Allianz of America Inc. ("Allianz of America") is a Delaware corporation with its principal place of business in Novato, California that holds a 99.8% non-managing interest in AAMA LLC. Allianz of America is a wholly-owned indirect subsidiary of Allianz SE.

31. Defendant Allianz Asset Management GmbH ("AAM GmbH") is incorporated and headquartered in Munich, Germany and is the asset management division of Allianz SE. AAM GmbH is the direct, 100% owner of AAMA Holdings and holds a 0.1% non-managing interest in AAMA LLC. In 2019, Allianz SE reported €7.164 billion in operating revenue from the Allianz's asset management business organized under AAM GmbH, substantially including revenues derived from AAM GmbH's activities and interests in managing the Structured Alpha Funds through the operation of Allianz Global Investors, which AAM GmbH controlled at all relevant times. Given AAM GmbH's control and management of Allianz Global Investors, AAM GmbH was responsible for the sale, marketing, operation and risk management of the Structured Alpha Funds sold to the Alaska Laborers Plan.

32.     Allianz SE is a publicly traded European insurance and financial services company based in Munich, Germany that provides asset management services to 82 million clients in over 70 countries. Allianz SE refers to itself and its subsidiaries as the "Allianz Group." Allianz SE holds a direct, nearly 75% interest in AMA GmbH and an indirect, 100% interest in Allianz of America. According to the Allianz SE Statutes, or articles of incorporation, Allianz SE's "corporate purpose" is "the direction of an internal group of companies, which is active in the areas of insurance, banking, asset management, and other financial, consulting, and similar services." Allianz SE, through its control over Allianz Global Investors, engaged in substantial management and business activities associated with the sale, distribution, supervision and risk management of the Structured Alpha Funds, as marketed and sold to the Alaska Laborers Plan.

33.     AllianzGI claimed in its marketing materials that "Independent risk-oversight professionals" were monitoring AllianzGI's trade activity and risk profiles daily. Specifically, the Allianz SE Global Head of Performance & Portfolio Risk, from an "independent subsidiary of Allianz SE," was identified as part of the "Structured Alpha investment team" responsible for Risk Management of the Structured Alpha Funds.

34.     The personnel and operational overlap of the above Allianz GI affiliates establishes the control relationship between each entity and AllianzGI, which is also evidenced by their shared ownership, shared directors and officers, and a unilateral reporting structure. For example, AllianzGI's sole and direct corporate parent, AllianzGI Holdings, shares numerous overlapping directors and executives, as well as the same business address and phone number with AllianzGI.  Paul Koo is both the Chief Compliance Officer of AllianzGI and a director of

AllianzGI Holdings. As such, he executed AllianzGI's Forms 13G filed with the SEC on behalf of both AllianzGI and AllianzGI Holdings.

35.   Further, numerous individuals held director or managing director positions at both AllianzGI and AllianzGI Holdings: Barbara Claussen, John Carroll; David Jobson; Erin Bengtson Olivieri, Christopher Cieri, Joseph Quirk, Steven Ricci, Frank Garofalo, Bruce Goodman, David Hood, Douglas Forsyth, Peter Bonanno, and Joseph Scull.

36.   Further establishing the control relationship among these entities, AllianzGI, AllianzGI Holdings, AAMA LP, AAMA LLC, AAMA Holdings, and PFP, under current and prior entity names, have had shared directors and officers, including:

- John Maney: COO and Managing Director of AAMA LP and AAMA LLC, and Managing Director of AllianzGI.

- James Funaro: Senior Vice President of Tax Matters of AllianzGI, AAMA LP, and AllianzGI Holdings.

- Tony Burg: Senior Vice President and Treasurer of AllianzGI, AAMA LLC, AAMA LP, AAMA Holdings, and AllianzGI Holdings.

- Kellie Davidson: Secretary of AAMA LLC and AAMA LP; Assistant Secretary of Allianz GI, AAMA Holdings, AllianzGI Holdings.

- Tucker Fitzpatrick: Senior Vice President and Secretary of AAMA Holdings; Senior Vice President and General Counsel of AAMA LP, Assistant Secretary of AllianzGI Holdings and Allianz GI.

- Michael Puntoriero: CFO of PFP; Managing Director and CFO of AAMA LP and PFP.

- Vinh Nguyen: Senior Vice President and Treasurer of AllianzGI, AAMA LLC, AAMA LP, AAMA Holdings, and PFP.

- Colleen Martin: SVP and Controller of AllianzGI, AAMA LLC, AAMA LP, AAMA Holdings, and PFP.

- John Viggiano: Managing Director and US General Counsel with Allianz Global Investors, and who previously served as Chief Risk Officer, Head of Compliance and Regulatory Counsel for AAM GmbH.

37.     These overlapping relationships among the Allianz Defendants' employees, officers and directors are consistent with Allianz Global Investors' branding and representations to Plaintiffs.  Indeed, Allianz SE's corporate filings also illustrate the important role the ultimate parent company—Allianz SE—plays in establishing and enforcing the risk framework and procedures that failed in the case of the Alpha Funds.  For example, Allianz SE's Board of Directors is charged with "setting business objectives and the strategic direction, for coordinating and supervising the operating entities, and for implementing and overseeing an efficient risk management system."  Board members of both Allianz SE and the Allianz Group sat on a "Group Investment Committee" responsible for "implementing the [Allianz] Group investment strategy, including monitoring group-wide investment activities" and "approving investment-related frameworks and guidelines[.]"  According to those filings, Allianz Group runs its "operating entities"—including the Defendant subsidiaries here that comprise its asset management division—"via an integrated management and control process," which includes Allianz Group reviewing the operating entities' "business strategies and goals."

38.     Allianz SE acknowledges that it exercises controlling power over each of the other Allianz Defendants and relies on their business activities in assessing its own solvency under applicable European insurance regulations.  Specifically, according to Allianz Group's 2019 Solvency and Financial Condition Report, Allianz SE exercises a "dominant" influence over, has 100% voting rights in and capital share with, and uses 100% of the financials for the establishment of Allianz Group's consolidated accounts and solvency calculation of Defendants AllianzGI, AllianzGI Holdings, AAMA LP, PFP, AAMA LLC, AAMA Holdings, Allianz of America, and AAM GmbH— confirming the ultimate control Allianz SE exerts over the other Allianz Defendants.

## IV.    FIDUCIARY STATUS OF ALLIANZGI

39.    Section 3(21)(A) of ERISA provides that a person is a fiduciary with respect to a

plan to the extent that: "(i) he exercises any discretionary authority or discretionary control

respecting management of such plan or exercises any authority or control respecting

management or disposition of *[plan] assets*; (ii) he renders investment advice for a fee or other

compensation, direct or indirect, with respect to [any *plan assets*]…." (Emphases added.)

29 U.S.C. § 1002(21)(A).

40.    ERISA § 3(38) states that an "investment manager" means a fiduciary "(A) who

has the power to manage, acquire, or dispose of any *asset of a plan*; (B) who (i) is a registered as

an investment adviser under the Investment Advisers Act of 1940; … and (C) has acknowledged

in writing that he is a fiduciary with respect to the plan." 29 U.S.C. § 1002(38). (Emphasis

added.) An investment manager is, by definition, a fiduciary, regardless of whether it would be a

fiduciary under the definition in Section 3(21), quoted above.

41.    ERISA § 3(42) describes when plan investments, including plan investments in

investment vehicles such as the Allianz 350 Fund, can be considered "plan assets." 29 U.S.C. §

1002(42). The Allianz Structured Alpha 350 LLC Confidential Private Placement Memorandum

("PPM") effective as of December 31, 2017, under the section titled "Employee Benefit Plan

Considerations," in the subsection titled "Plan Assets," correctly explains as follows:

> [I]f a plan subject to ERISA or Section 4975 of the [Internal Revenue] Code
> acquires an "equity interest" (such as the Interests) in a private investment fund or
> similar entity (such as the Fund), and if benefit plan investors in the aggregate
> hold 25% or more of the value of any class of equity interests in the entity, the
> entity's assets will be treated as "plan assets" for purposes of the fiduciary
> responsibility standards and prohibited transaction restrictions of ERISA.

42.    The PPM continues:

> The Managing Member [AllianzGI] has the right, in its sole discretion, to permit
> or restrict Investments in the Fund by benefit plan investors. The Managing

Member presently does not intend to restrict investments by benefit plan investors. Therefore, benefit plan investors from time to time may hold 25% or more of the value of a class of Interests and, consequently, the assets of the Fund from time to time may be regarded as "plan assets" for purposes of ERISA and Section 4975 of the Code. During any such time or times, the Managing Member…will be a "fiduciary" (as defined by ERISA) with respect to any investing ERISA plan and will be subject to the obligations and liabilities imposed on fiduciaries by ERISA. The Managing Member also will be subject to certain restrictions on self-dealing and conflicts of interest and will be required to avoid causing the Fund to engage in transactions with parties of interest of investing ERISA plans and disqualified persons of investing plans subject to Section 4975 of the Code, unless an exemption applies.

43.     In summary, under ERISA (as correctly stated by AllianzGI), if benefit plan investors held 25% or more of the value of the Allianz 350 Fund at a relevant time, then AllianzGI was an ERISA fiduciary subject to all of ERISA's fiduciary responsibility standards.

44.     Accordingly, at all times that benefit plan investors held 25% or more of the value of the Allianz 350 Fund, AllianzGI was a fiduciary subject to ERISA's strict fiduciary duties of prudence and loyalty under ERISA § 404, 29 U.S.C. § 1104—the highest know to the law. Further, at all such times, AllianzGI was subject to ERISA's prohibitions against self-dealing and conflicts of interest under ERISA § 406(b), 29 U.S.C. § 1106(b).

45.     To the extent that the Alaska Laborers Plan's investments in the Allianz350 Fund are not considered Plan Assets for any relevant period of time, then according to the PPM, Allianz was still subject to the ERISA standard of prudence.  The PPM states that Allianz "nevertheless will use its reasonable best efforts to discharge its duties consistent with the standard of care imposed on plan fiduciaries under Section 404(a)(1)(B) of ERISA."

## V.     FACTUAL ALLEGATIONS

### A.     AllianzGI Structured Alpha Funds

46.     The Structured Alpha strategy consists of alpha and beta components.  According to AllianzGI's offering materials, the Structured Alpha funds were designed to provide investors

with passive exposure to equity and fixed income markets (beta) while outperforming defined benchmark indices by providing "consistent, uncorrelated returns" (alpha) regardless of market conditions.  AllianzGI described its investment objective in the private placement memorandum for the Structured Alpha 350 Fund ("Structured Allianz 350 PPM") as seeking to outperform the MSCI ACWI Investible Market Index (the "Index") by approximately 350 basis points (3.5%) net of management fees (the "benchmark").  To achieve this objective, AllianzGI described its Allianz 350 Fund investment strategy as comprising a beta component, consisting of "a futures trading program, cash investments, exchange traded funds, equity swaps or securities to achieve exposure to the Index," and an alpha component, where it touted its "investments in puts and calls on equity indices through the use of a proprietary model to construct option spreads."  The Structured Allianz 350 PPM also described the use of "operational leverage," whereby the Allianz 350 Fund would make "use of certain derivative instruments and by using the underlying investments of the Beta Component as collateral in pursuit of its Alpha Component."

47.     In its offering presentations, AllianzGI claimed that Structured Alpha Fund's "three-pronged investment objective" would "[o]utperform during normal (up/down/flat) market conditions," "[p]rotect against a market crash," and "[n]avigate as wide a range of equity-market scenarios as possible."

48.     AllianzGI touted that one part of its position construction was "[d]esigned to generate returns when equity indexes rise or fall more than normal over a multi-week period" and that another part was "[d]esigned to protect the portfolio in the event of a market crash."

49.     In describing its hedging positions, AllianzGI stated, "The puts are laddered for various outcomes to the downside" and that the "primary objective of the hedging positions is to

protect the strategy from a short-term equity-market crash … defined as a decline of 10% to 15% in less than 5 days."

50.     In describing the "Expected Behavior" of the portfolio, AllianzGI's materials explained that in a volatile market condition, there is "potential for higher outperformance, lower active risk." In addition, the materials explained that if there was a rapid change from low to high volatility, "performance could be more volatile than usual for a few weeks, the portfolio could underperform for a few weeks, and higher volatility levels should enable greater outperformance in subsequent months."

51.     AllianzGI purported to manage, monitor, and minimize risk in a variety of ways, including, according to its literature, the following:

- **Structural long-put protection.** In furtherance of its claimed downside-risk protection, AllianzGI claimed to "always be a net buyer of put options, providing protection against a tail event or market crash."

- **Rigorous scenario testing.** AllianzGI purportedly performed "tail-risk protection, risk reduction, and/or volatility smoothing" based on "analysis of historical movements of broad-based US indices, as well as rigorous scenario testing."

52.     To add to the security of the strategy, AllianzGI claimed there were "two pillars of risk management," and that each layer of risk management maintains "independent governance."  At the portfolio level, risk management was purportedly monitored at "real-time" based on "statistical equity index behavior," using a "proprietary scenario and stress testing models," as well as "monitoring of bid-ask spreads for options to ensure that our restructuring discipline is executable."  At the firm-level, the Structured Alpha Funds claimed to deploy an independent enterprise risk management function, which was apparently responsible for overseeing independent portfolio risk, monitoring daily trade activity, and analyzing weekly risk profiles.

53.     One of the other selling points AllianzGI touted was that it would not be paid if the Structured Alpha Funds' did not outperform their benchmarks. If a Structured Alpha Fund outperformed its benchmark, then AllianzGI would receive a fee of 30% of that outperformance. If the Fund underperformed its benchmark, AllianzGI would receive nothing, and could not earn any performance fees on subsequent excess performance until the Structured Alpha Fund had made up the deficit for past underperformance.  This fee structure created a powerful temptation for AllianzGI management to react to severe underperformance by causing the Allianz 350 Fund to take on substantial additional risk in the hope that management fees could be salvaged; indeed, it appears that this is exactly what happened in the wake of extraordinary losses in February and March 2020.

**B.      The Alaska Laborers Plan's Investment in the Allianz 350 Fund**

54.     In 2018, the Alaska Laborers Plan began a transition to new investment allocation targets. New investments that contained downside protection were especially important, given that the Alaska Laborers Plan's was underfunded under applicable ERISA funding rules. In 2018, the Plan was less than 80% funded and thereby in "Endangered" status (yellow zone) under the Pension Protection Act of 2006 (PPA),[1] As a result, it was subject to a "Funding Improvement Plan" to help return the Plan to a funding status that was not subject to PPA rules.

55.     As discussed above, the Structured Alpha Funds, including the Allianz 350 Fund, were marketed as providing favorable returns in virtually any environment, including the ability to benefit from high market volatility.

56.     The Allianz350 Fund was marketed as providing "[p]assive global equity exposure with 100% beta exposure to the MSCI ACWI IMI [index]. The strategy strives to add

---

[1] The PPA established a new set of rules for improving the funding of multiemployer plans that the law defines as being in "endangered" or "critical" status.

alpha over the passive equity exposure (i.e., capture the equity insurance risk premium) by combining a range of options trade structures with an attractive payoff profile."

57.     On or about May 30, 2019, the Alaska Laborers Plan invested $26 million in the Allianz 350 Fund. On or about February 27, 2020, another $15 million was invested in the Allianz 350 Fund. At the end of February, 2020, the market value of the Plan's assets in the Fund was over $40 million, even after the beginning of the market decline.

58.     Following the events in February and March, 2020, the Alaska Laborers' Plan lost at least $20 million on its investments in the Allianz 350 Fund. As a result, the Alaska Laborers Plan's funding status has further declined. The Plan is now in "critical" status (red zone) under the PPA. The Alaska Laborers Plan will now have to operate under a "Rehabilitation Plan", which will likely include additional employer contributions as well as reductions to certain benefits to participants and beneficiaries.

**C.     AllianzGI Abandoned the Hedged and Market Neutral Strategy It Had Represented to Investors**

59.     The coronavirus began to be widely covered by major U.S. news outlets as early as January 8, 2020. On January 21, 2020, equity prices worldwide dropped due to fears that the coronavirus outbreak could slow global economic growth. On February 3, 2020, Mohamed El-Erian, chief economist for AllianzSE, appeared on CNBC to comment on the impact of the spread of coronavirus. El-Erian said, "The coronavirus is different…it is big. It's going to paralyze China. It's going to cascade throughout the global economy. And, importantly, it cannot be countered…by central bank policies. So, I think we should pay more attention to this, and we should try and resist our inclination to buy the dip."

60.     Indeed, the VIX Index (the Chicago Board Options Exchange Volatility Index), which measures the market's expectations of volatility based on the S&P 500—and which often

increases preceding and/or in a market downturn—was at a historic high of 40 at the end of February 2020 and leading into March 2020.

61.     As volatility in the market increased, however, throughout February and March 2020, AllianzGI made a series of investments positioning the Alpha Portfolio funds to generate returns if volatility subsided. Specifically, as the market began to slide in February 2020, and the funds in the Alpha Portfolio began incurring losses, AllianzGI structured the portfolios in an attempt to recoup those losses, taking aggressive positions that deviated from its stated investment strategy and abandoning the risk controls Allianz represented it would have in place.

62.     By the end of February 2020, AllianzGI positioned the Structured Alpha portfolio to generate returns if the market stabilized and volatility levels declined. It gambled that the Portfolio would reap substantial returns by selling an immense amount of put and calls options and thereby reaping "insurance premiums" but would never result in any liability to the investors who purchased those options. This positioning was totally contrary to the requirement that the Funds "Buy put options—in a greater quantity than sold—to protect in the event of a market crash/closure."

63.     The Structured Alpha Portfolio's positioning in volatility options was also anything but market neutral—it was positioned to decline in value if there was an increase in volatility. Rather than have positions that would protect Structured Alpha investors, including but not limited to those in the Allianz 350 Fund, in the event of further market downturn, the Structured Alpha Portfolio's funds were not hedged against a normal market decline, much less a more severe downturn. AllianzGI funds did not follow a diversified option strategy with proper risk modeling; rather, AllianzGI took large, extremely risky positions that assumed equity prices would rise and volatility would fall.

64.     In addition to exposing the Allianz 350 Fund to increased volatility, in mid-March, 2020, AllianzGI abandoned the "beta" component of its investment strategy by failing to maintain an investment position that was designed to track the performance of the MSCI ACWI Investible Market Index.  Instead, AllianzGI caused the Allianz 350 Fund to exit that strategy component after significant market declines, and to not be in a position to recoup those losses when the MSCI ACWI Investible Market Index rebounded later in March.  AllianzGI's actions in this regard were both imprudent and contrary to representations made to the Plan and other investors.

65.     In late March 2020, in breach of its fiduciary duties of prudence and loyalty, AllianzGI took the massive risk of "doubling down" on its prior failed strategy, without regard for the potential to increase its clients' losses, because AllianzGI needed to reverse the Structured Alpha Funds' existing losses by March 31, 2020, or it would be unable to collect performance-based management fees from the Alaska Laborers Plan and the other investors in the Structured Alpha Funds for the foreseeable future.

66.     Indeed, the market downturn in February and March 2020 was hardly unprecedented and resembled a pattern that has repeated numerous times in numerous contexts. For example, on October 19, 1987, commonly known as "Black Monday," the Dow declined over 22%, the largest single-day decline in history.

67.     In comparison, on March 16, 2020, the date of the biggest one-day drop of the coronavirus-related downturn, the Dow dropped just under 13%. Over the span of several weeks from mid-February through March 2020, the Dow lost about 35% of its value. Indeed, a March 31, 2020 research note by AllianzGI acknowledged, "Even though US equity markets have fallen

around 25% this year, previous down-turns were worse: markets fell about 50% from peak to trough in 2001 and 2008[.]"

68.    Similarly, periods of sudden spikes in volatility are common and have occurred at least once a decade. For example, VIX repeatedly spiked from early 2007 to late 2018, including reaching a high of 50.3 in February 2018 compared to an average of 10.8 for the 30 prior trading days. On February 5, 2018, a day that would come to be known as "Volmageddon," VIX jumped by a record 20 points. AllianzGI specifically drew a comparison to that "volatility surge" in its fourth-quarter 2019 commentary for the Structured Alpha Funds, stating, "Structured Alpha's option portfolio is positioned for a strong improvement in the event of another February 2018-type move" as "refinements we have implemented since then as part of our ongoing R&D process have made the option portfolio more resilient."

69.    As the foregoing clearly indicates, through January, 2020, the Allianz 350 Fund achieved returns that closely tracked its benchmark.  But in February and March, 2020, the Fund suffered losses that were multiples of the losses experienced by the benchmark.  These losses were the direct result of AllianzGI's failure to have in place and/or its decision to abandon the market-neutral, volatility-neutral, properly hedged investment strategy it had represented to Plaintiff the Plan and other investors.

70.    Despite the ample historical precedent for a market drawdown and volatility surge such as that which occurred in February and March 2020, and contrary to its professed risk management acumen, AllianzGI's management of the Structured Alpha Funds' portfolios increased the likelihood of catastrophic losses. As an investment manager charged with the responsibility to be prepared for market downturns and to have "reinsurance" against catastrophic shocks, AllianzGI was required to have proper hedging positions in place to protect

its clients' investments in the event of a sudden downturn. AllianzGI also should have maintained proper risk management protocol and stress testing to ensure that it remained disciplined with its downside protections.

71.     The dramatic losses that the Structured Alpha Funds, including the Allianz 350 Fund, suffered throughout the market downturn were at odds with the structural risk protections that AllianzGI was required to have in place for them. Moreover, adequate stress testing for dramatic market movements—which the AllianzGI management team and Allianz Global Investors were required to perform for the Structured Alpha Funds regularly—should have highlighted the risks of a severe, multi-week decline and sudden uptick in volatility that occurred in February and March 2020.

72.     The following graphically depicts the disastrous effects of AllianzGI's abrupt abandonment of its stated investment strategy in February-March, 2020:



**D.      AllianzGI's Attempts to Explain its Actions Ring Hollow**

73.      On July 20, 2020, AllianzGI published on its website the results of an internal

review Allianz claims to have conducted into the "substantial losses" its Structured Alpha Funds

incurred. The stated purpose of Allianz's review, titled "Structured Alpha March 2020

performance," was "to better understand how the Portfolio's investment and risk management

processes operated in the face of the market volatility" experienced at that time.

74.      Allianz's account purports to describe certain of its actions in March 2020, as

follows: "During the eleven trading days between March 2 and March 16," Allianz says, "there

were at least four instances" in which it restructured the short puts on the S&P 500 "by both

reducing the strike prices of the put options and by decreasing the number of positions held."

"Similarly, the portfolio managers replaced short-term short VIX calls with new longer-term

short VIX calls at more distant strike prices. An analogous process occurred for short VXX

calls," according to Allianz (the VXX is an exchange traded note, the value of which is highly

correlated to the VIX). But "commencing on March 12, 2020, the Portfolio Management team

stopped re-layering new short puts on the [S&P 500] and [Nasdaq], and short calls on the VIX

and VXX to further reduce the risks in the portfolio."

75.      These details confirm that Allianz was betting on a market rebound by continuing

to re-layer short positions during the critical period when Allianz should have been mitigating

risk, not compounding it. Indeed, Allianz admits that it was re-layering risk-bearing positions

until as late as March 12, 2020. Only then did Allianz stop exposing the portfolio to further

losses by refraining from selling more insurance against an additional market decline.

76.      Allianz's July 2020 report claims that the risks of investing in the Structured

Alpha Funds were "fully disclosed, including the risk of total loss," and that the Funds' hedges

were designed to offer only "some protection" in the event of a market crash.  In July, 2020,

Allianz asserted that the Structured Alpha Funds were "not intended to provide broader protection against all market downturns, particularly downturns that transpire over longer periods of time." Rather, they were "deliberately constructed with options that were both of relatively short expiration and far out of the money" only to "protect against a ***one-day market shock.***" (Emphasis added.)

77.     But Allianz' July 2020 statements cannot be reconciled with the statements it made to the Plan and others when soliciting investment in the Structured Alpha Funds.  When promoting the Structured Alpha Funds, Allianz characterized the hedges as "reinsurance" that would be "in place at all times" in order to "protect the portfolio in the event of a market crash." It emphasized to the Plan's investment manager that its investment strategy addressed "two risks: the overnight market crash ***and the multi-week market correction***." (Emphasis added.) Allianz's "tail-risk protection," it said, "includes both hedging primarily for a single-day market crash as well as better ***protection in the event of multi-day or multi-week significant declines***." (Emphasis added.) It also stated that the strategy was "[d]esigned to generate returns when equity indexes rise or fall more than normal over a multi-week period." Allianz bolstered these claims about protection against multi-week declines with stress testing purporting to show, for instance, that the strategy would yield positive returns during market shocks that took weeks to transpire. Allianz provided potential investors with detailed information purportedly describing how its investment strategy would have fared during several historical market downturns that lasted many days or longer.  Allianz's after-the-fact description of the hedges as a partial backstop— protecting only against a "one-day market shock" but nothing else—expose its prior inconsistent representations to Plaintiffs as false and misleading.

78.     Allianz's July 2020 report claims that because the hedges were constructed to protect only "against a one-day market shock," Allianz properly "mitigated" portfolio risk through restructuring.  The report further claims that Allianz's "Enterprise Risk Management function" stress tested the portfolio against "*single day* scenarios" only. (Emphasis added.) Again, these statements were directly contrary to Allianz's previous representations.

## VI.     CLAIMS FOR RELIEF

### COUNT I
**Breach of Fiduciary Duties Under ERISA §§ 502(a)(2) and (a)(3),
29 U.S.C. §§ 1132(a)(2) and (a)(3)
(By Plaintiffs Merrick and Geraghty against AllianzGI)**

79.     Plaintiffs hereby re-allege and incorporate by reference the allegations of the proceeding paragraphs.

80.     Defendant AllianzGI was a fiduciary of the Alaska Laborers Plan within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), because it exercised discretionary authority and control over the management and disposition of the assets of the Allianz 350 Fund. Additionally, AllianzGI was a fiduciary within the meaning of ERISA § 3(21)(A)(ii), 29 U.S.C. § 1002(21)(A)(ii), because it rendered investment advice for a fee or other compensation, direct or indirect, with respect to any plan assets.

81.     At all times when the assets of the Allianz 350 Fund constituted ERISA plan assets, AllianzGI was also an Investment Manager within the meaning of ERISA § 3(38), 29 U.S.C. § 1002(38) with the power to manage, acquire, or dispose of the Alaska Laborers Plan's assets invested in the Allianz 350 Fund.

82.     AllianzGI acknowledged in the PPMs that "for so long as the assets of the Fund are treated as 'plan assets' for purposes of ERISA, [Allianz] is a 'fiduciary,' as such term is defined by ERISA."

83.     As a fiduciary of the Alaska Laborers Plan, Defendant AllianzGI was required pursuant to ERISA § 404(a)(1)(A) to act solely in the interest of participants and beneficiaries of the Alaska Laborers Plan and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A).

84.     As a fiduciary of the Alaska Laborers Plan, Defendant AllianzGI was required pursuant to ERISA § 404(a)(1)(B) to discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).

85.     ERISA § 409, 29 U.S.C. § 1109, provides, inter alia, that any person who is a fiduciary with respect to a plan and who breaches any responsibilities, obligations or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

86.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan fiduciary to bring suit for relief under ERISA § 409, 29 U.S.C. § 1109.

87.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan fiduciary to bring suit to obtain appropriate equitable relief to enforce provisions of Title I of ERISA, which include its fiduciary responsibility provisions.

88.     A prudent and loyal fiduciary in this situation would have: conducted adequate stress testing to anticipate losses in market conditions similar to those experienced in early 2020,

and then would have responded prudently and loyally to those stress tests, as well as to declining fund performance, including by putting participants' and beneficiaries' interests before its own.

89.     Defendant AllianzGI breached the duties of prudence and loyalty, including but not limited to the following:

- Failing to appropriately hedge to protect plan assets during market declines generally and/or the 2020 market decline;

- Failing to build or maintain adequate structured risk protection into the Structured Allianz 350 Fund;

- Making unreasonable assumptions about changes in VIX leading up to and during the market downturn in the first quarter of 2020 in light of the contrary evidence undermining those assumptions, or disregarding the assumptions it had in fact made about VIX performance;

- Doubling down on its positions in March and continuing to sell additional short volatility options rather than prudently and loyally exiting losing positions.  The doubling down exacerbated the Alaska Laborers Plan's losses, while at the same time attempting to maximize AllianzGI's fees.

90.     As a result of the above-described conduct, Defendant AllianzGI has (a) failed to act solely in the interests of the participants and beneficiaries of the Alaska Laborers Plan for the exclusive purpose of providing them benefits, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and (b) failed to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

91.     As a result of the acts and omissions of AllianzGI, the Alaska Laborers Plan suffered losses of at least $20 million.

## COUNT 2
## Common Law Breach of Fiduciary Duty
### (By the Alaska Laborers Plan Against All Defendants)

92.     Plaintiff hereby re-alleges and incorporates by reference the allegations of the proceeding paragraphs.

93.     This claim for relief is pleaded in the alternative to the ERISA claim in Count 1 to the extent that during any relevant time the assets of employee benefit plan investors in the Allianz 350 Fund comprised less than 25% of the Fund's assets such that this cause of action is not preempted by ERISA.

94.     As a registered investment adviser serving as Managing Member and Investment Manager of the Alpha Funds, AllianzGI owed a fiduciary duty to the Alaska Laborers Plan arising from this advisory relationship.

95.     Further, AllianzGI expressly acknowledged that it was Alaska Laborers Plan's fiduciary. Specifically, AllianzGI acknowledged in writing that it remained a fiduciary to the extent that the underlying assets of any Alpha Fund did not constitute "plan assets" within the meaning of ERISA at any time. In the LLC Agreements, AllianzGI acknowledged "[t]o the extent that the underlying assets of the Company do not constitute Plan Assets [under ERISA], Allianz Global Investors U.S. LLC . . . shall at all times use its reasonable best efforts to discharge its duties consistent with the standard of care imposed on fiduciaries under Section 404(a)(1)(B) of ERISA." AllianzGI also acknowledged in the PPMs that "[d]uring any such time that the assets of the Fund are not treated as 'plan assets' for purposes of ERISA . . . [AllianzGI] nevertheless will use its reasonable best efforts to discharge its duties consistent with the standard of care imposed on plan fiduciaries under Section 404(a)(1)(B) of ERISA[.]"

96.     In addition, the LLC Agreements and Subscription Agreements appointed AllianzGI as the Alaska Laborers Plan's representative and attorney-in-fact with respect to the

Plan's investments in the Allianz 350 Fund, a designation that imposed a fiduciary duty of loyalty on the attorney-in-fact.

97.     AllianzGI's fiduciary duties to the Alaska Laborers Plan also followed from the fact that AllianzGI exercised full discretion in the management of the Allianz 350 Fund's portfolio, including the construction of the option positions, spreads, timing of trades and selection of indexes, and AllianzGI's repeated representations that it was acting in a fiduciary capacity with respect to the Alaska Laborers Plan's investments in the Allianz 350Fund. AllianzGI had an obligation to carry out its fiduciary duties with respect to the Allianz 350 Fund with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and with experience and familiarity with options trading, portfolio strategy and market risks would use in a similar situation

98.     AllianzGI breached its fiduciary duty to the Alaska Laborers Plan by:

- Failing to appropriately hedge to protect plan assets during market declines generally and/or the 2020 market decline;

- Failing to build or maintain adequate structured risk protection into the Allianz 350 Fund;

- Making unreasonable assumptions for changes in VIX leading up to and during the market downturn in the first quarter of 2020 in light of the contrary evidence undermining those assumptions, or disregarding the assumptions it had in fact made about VIX performance;

- Doubling down on its positions in March and continuing to sell additional short volatility options rather than prudently and loyally exiting losing positions.  The doubling down exacerbated the Alaska Laborers Plan's losses, while at the same time attempting to maximize AllianzGI's fees.

99.     Defendants Allianz SE, AAM GmbH, Allianz of America, AAMA Holdings, AAMA LLC, AAMA LP, PFP, and AllianzGI Holdings are liable for the actions of AllianzGI under the doctrine of respondeat superior. AllianzGI's conduct was undertaken while carrying

out its routine functions as a portfolio manager and engaging in such conduct as would have been reasonably expected in performing those functions.

100.    By virtue of the unified corporate structure of the Allianz Defendants and the relationships among the corporate parents of AllianzGI as alleged above, each of those defendants had the power to influence and control, and did influence and control, directly or indirectly, the acts of AllianzGI.

101.    The Allianz Defendants also each acted in a joint enterprise by and among each other, including but not limited to managing the Structured Alpha Funds through the operation of "Allianz Global Investors." In so doing, they acted as agents of one another, and acted under the ultimate authority and control, and for the benefit of Allianz SE.

102.    As a direct and proximate result of the actions and omissions by the Allianz Defendants set forth above, the Alaska Laborers Plan has sustained actual damages in an amount to be proven at trial.

### COUNT 3
### Common Law Claim for Negligence
### (By Alaska Laborers Plan Against All Defendants)

103.    Plaintiff hereby re-alleges and incorporates by reference the allegations of the proceeding paragraphs.

104.    This claim for relief is pleaded in the alternative to the ERISA claim in Count 1 to the extent that during any relevant time the assets of employee benefit plan investors in the Allianz 350 Fund comprised less than 25% of the Fund's assets such that this cause of action is not preempted by ERISA.

105.    As Managing Member of the Alpha Funds, AllianzGI owed a duty of care to Alaska Laborers Plan based on the special relationship, or "privity," arising out of the

Agreements and Subscription Agreements between AllianzGI and the Alaska Laborers Plan regarding each of the Alpha Funds.

106.    In addition, the Private Placement Memoranda for the Alpha Funds provided that AllianzGI was "responsible for the general management of the investment portfolios of the Fund[s] under the Operating Agreement[s]."

107.    AllianzGI breached its duty to the Alaska Laborers Plan by failing to exercise reasonable care in properly protecting the Alpha Funds against a severe market downturn.

108.    Specifically, AllianzGI failed to conduct adequate stress tests to assess the ability to trade the Alpha Funds' portfolios during times of low market liquidity or disregarded the results of the tests it conducted.

109.    In addition, AllianzGI abandoned the hedging strategies that it was supposed to have in place to provide structural risk protections to the Alpha Funds in any market environment.

110.    AllianzGI also made unreasonable assumptions for changes in VIX leading up to and during the market downturn in the first quarter of 2020 in light of the contrary evidence undermining those assumptions, or disregarded the assumptions it had in fact made about VIX performance. There had previously been no less than seven prior instances when the VIX had risen above 50 (and 13 times that it had been above 35) which Allianz seemingly ignored or elected never to actually be prepared for.

111.    AllianzGI further was negligent by taking actions during the downturn—including by continuing to sell naked short volatility call options at the very time volatility was increasing —that locked in and exacerbated the Alpha Funds' negative returns.

112.    AllianzGI's mismanagement of the Alpha Funds ran contrary to AllianzGI's duty to build "structural risk protection" into its portfolios, as AllianzGI—as Managing Member of the Structured Alpha Funds—was obligated to do on behalf of its investors.

113.    Defendants Allianz SE, AAM GmbH, Allianz of America, AAMA Holdings, AAMA LLC, AAMA LP, PFP, and AllianzGI Holdings are liable for the actions of AllianzGI under the doctrine of respondeat superior. AllianzGI's conduct was undertaken while carrying out its routine function as a portfolio manager and engaging in such conduct as would have been reasonably expected in that regard.

114.    By virtue of the unified corporate structure of the Allianz Defendants and the relationships among the corporate parents of AllianzGI as alleged above, each of these defendants had the power to influence and control, and did influence and control, directly or indirectly, the acts of AllianzGI.

115.    The Allianz Defendants also each acted in a joint enterprise by and among each other, including by holding out the management of the Allianz 350 Fund through the operation of "Allianz Global Investors." In so doing, they acted as agents of one another, and acted under the ultimate authority and control, and for the benefit of Allianz SE.

116.    As a direct and proximate result of the actions and omissions by the Allianz Defendants set forth above, the Alaska Laborers Plan has sustained actual damages in an amount to be proven at trial.

**COUNT 4**
**Common Law Claim for Breach of Contract**
**(By Alaska Laborers Plan Against All Defendants)**

117.    Plaintiff hereby re-alleges and incorporates by reference the allegations of the proceeding paragraphs.

118.    This claim for relief is pleaded in the alternative to the ERISA claim in Count 1 to the extent that during any relevant time the assets of employee benefit plan investors in the Allianz 350 Fund comprised less than 25% of the Fund's assets such that this cause of action is not preempted by ERISA.

119.    AllianzGI held contractual obligations to the Alaska Laborers Plan under the Allianz 350 Fund Agreements, including the Private Placement Memoranda for each Fund. Under the Private Placement Memoranda, AllianzGI as Managing Member was obligated to set up a beta or futures component for each Alpha Fund consisting of various investments to provide exposure to the benchmark indexes.

120.    Further, the Alpha Funds' alpha components were supposed to "consist of investments in puts and calls on equity indexes through the use of a proprietary model to construct option spreads." This strategy's stated objective was to "create option based profit zones that, upon expiration of the options, will capture positive payoffs if the level of the underlying index (or other instrument) ends up within the profit zone." AllianzGI was obligated to "optimize spread positions and profit zones based on (a) targeted positive return potential, (b) structural risk protections, (c) collateral management, and (d) flexibility to restructure profit zones if necessary."

121.    Under the Agreements, AllianzGI could not take any unlawful action in connection with the management of Fund assets.

122.    AllianzGI breached these contractual obligations by failing to build proper risk protections into the Alpha Funds' portfolios in accordance with the stated investment strategy.

123.    Defendants Allianz SE, AAM GmbH, Allianz of America, AAMA Holdings, AAMA LLC, AAMA LP, PFP, and AllianzGI Holdings are liable for the actions of AllianzGI under the doctrine of respondeat superior. AllianzGI's conduct was undertaken while carrying

out its routine function as a portfolio manager for the other Allianz Defendants, and engaging in such conduct as would have been reasonably expected of it in that capacity.

124.    By virtue of the unified corporate structure of the Allianz Defendants and the relationships among the corporate parents of AllianzGI as alleged above, each of which had the power to influence and control and did influence and control, directly or indirectly, the acts of AllianzGI.

125.    The Allianz Defendants also each acted in a joint enterprise by and among each other, including by holding out the management of the Funds through the operation of "Allianz Global Investors." In so doing, they acted as agents of one another, and acted under the ultimate authority and control, and for the benefit of Allianz SE.

126.    As a direct and proximate result of the actions and omissions by the Allianz Defendants set forth above, the Alaska Laborers Plan have sustained actual damages in an amount to be proven at trial.

## COUNT 5
### Engaging in Prohibited Transactions Forbidden by ERISA § 406(b)
### (By Plaintiffs Merrick and Geraghty against AllianzGI)

127.    Plaintiffs hereby re-alleges and incorporates by reference the proceeding paragraphs.

128.    ERISA § 406(b), 29 U.S.C. § 1106(b), provides, inter alia, that a "fiduciary with respect to a plan shall not (1) deal with the assets of the plan in his own interest or for his own account…."

129.    ERISA § 409, 29 U.S.C. § 1109, provides, inter alia, that any person who is a fiduciary with respect to a plan and who breaches any responsibilities, obligations or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan

any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

130.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan fiduciary to bring suit for relief under ERISA § 409, 29 U.S.C. § 1109.

131.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan fiduciary to bring suit to obtain appropriate equitable relief to enforce provisions of Title I of ERISA, which include its fiduciary responsibility provisions.

132.     AllianzGI engaged in prohibited transactions in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), by dealing with the assets of the Plan in its own interest.  Specifically, AllianzGI managed the Allianz 350 Fund to maximize its own fees and thereby added undisclosed risks to the Allianz 350 that Fund in the process, rather than dealing with those assets in the interest of the Alaska Laborers Plan and its participants and beneficiaries. AllianzGI did so by positioning the Allianz 350 Fund in such a way that it was largely unprotected in January and February 2020, and then doubling down when the market declined in February and March 2020, adding more risk Allianz 350in order to chase returns and thus performance fees.

133.     AllianzGI's violations of ERISA § 406(b), 29 U.S.C. § 1106(b), caused direct injury and losses to the Alaska Laborers Plan.

### COUNT 6
### Violations of Securities Act Sections 12 and 15
### (By Alaska Laborers Plan Against All Defendants)

134.     Plaintiff Alaska Laborers Plan hereby re-alleges and incorporates by reference the proceeding paragraphs.

135.     The shares purchased by the Alaska Laborers Plan in the Allianz 350 Fund constitute securities under applicable federal and state law.

136.    AllianzGI offered and sold the Allianz 350 Fund investment to the Alaska Laborers Plan by use of one or more instruments or communications in interstate commerce by means of a prospectus or oral communications that included the following misstatements of material fact as described in detail above.  Examples of such material misstatements of material fact are:

- That AllianzGI would not employ an investment strategy based on "a forecast on the direction of equities or volatility."  Exh. A attached hereto, AllianzGI Structured Alpha PowerPoint, February 2020, p. 17.

- That the Allianz Fund would "always be a net buyer of put options, providing protection against a tail event or market crash."  *Id.*

- That the strategy was "[d]esigned to generate returns when equity indexes rise or fall more than normal over a multi-week period." *Id.,* p. 19.

- That Allianz's hedging strategy provided protection "not only for a single-day market crash as well as better protection in the event of ***multi-day or multi-week significant declines***."  Exh. B attached hereto, p. 4 (emphasis added).

- That the strategy addressed "two risks: the overnight market crash ***and the multi-week market correction***." *Id.*, p. 2 (emphasis added).

- That the Structured Alpha Fund was positioned for "at least a 30% improvement in outcome" upon a recurrence of the type of market correction and volatility that was experienced in February, 2018.  Exh. A, p. 14.

- The Structured Alpha Portfolio's "alpha" component would, AllianzGI represented, provide investors with downside protection and upside in markets that were "up and down, smooth or volatile." *Id*., p. 3.

- That the Structured Alpha Fund would *buy and maintain* put options in a greater quantity than it sold to "protect the portfolio in the event of a market crash/closure" and further committed that options were to be "laddered for various market outcomes to the downside," ensuring protection in a wide range of negative scenarios. Exh. C attached hereto, AllianzGI Structured Alliaz 350, March 11, 2016, p. 14.

- That Structured Alpha Fund's "three-pronged investment objective" would "[p]rofit during normal (up/down/flat) market conditions,"

"[p]rotect against a market crash," and "[n]avigate as wide a range of equity-market scenarios as possible.  *Id.*, p.10.

- That the Structured Alpha Fund was "[d]esigned to generate returns when equity indexes rise or fall more than normal over a multi-week period" and "to protect the portfolio in the event of a market crash." *Id.*, p. 11.

137.    AllianzGI offered and sold the Allianz 350 Fund investment to the Alaska Laborers Plan by use of one or more instruments or communications in interstate commerce by means of a prospectus or oral communications that omitted to state materials facts necessary in order to make its statements, in light of the circumstances under which they were made, not misleading.  Such omissions include:

- The AllianzGI knew that its strategies would expose the Allianz 350 Fund to substantial losses under certain circumstances of significant market volatility;

- That AllianzGI would enter into transactions whose success would be dependent on the direction in which the market or volatility moved;

- That AllianzGI had in place insufficient practices, procedures or policies to ensure that its investment activities on behalf of the Allianz 350 Fund would be consistent with representations made to investors;

- The AllianzGI had never conducted stress tests sufficient to ascertain the ability of the Allianz 350 Fund to withstand various market declines, including multi-day market declines;

- That AllianzGI believed that its investment strategy afforded limited or no protection to the Allianz 350 Fund against market declines that lasted more than one day;

- That the Structured Alpha Fund fee structured incentivized AllianzGI to expose the Allianz 350 Fund to substantial risk of loss under certain circumstances.

138.     At the time of its investment, the Alaska Laborers Plan did not know of the falsity of the foregoing statements and omissions.

139.    The Alaska Laborer's investments in the Allianz 350 Fund were as follows:  on or about May 30, 2019, $26 million of the Alaska Laborers Plan assets were invested in the Allianz

350 Fund; on or about February 27, 2020, another $15 million was invested in the Allianz 350 Fund.

140.     Plaintiff's investments in the Allianz 350 Fund were redeemed as follows: on or about May 13, 2020, for $21,295,081.

141.     Accordingly, AllianzGI is liable to the Alaska Laborers Plan for the amount of such investments plus interest thereon from the dates of such investment through the date of redemption, costs and attorney fees, minus (b) income received by the Alaska Laborers Plan on such investments and the value thereof on the date of redemption.

142.     Each Defendant other than AllianzGI is jointly and severally liable with AllianzGI for all liability described herein because each such Defendant directly or indirectly controlled AllianzGI.

## COUNT 7
### Violations of Exchange Act Section 10 and Rule 10b-5
### (By Alaska Laborers Plan Against All Defendants)

143.     Plaintiff Alaska Laborers Plan hereby re-alleges and incorporates by reference the proceeding paragraphs.

144.     In connection with the Alaska Laborers Plan's investments in the Allianz 350 Fund, AllianzGI, intentionally and/or recklessly, by use of instrumentalities of interstate commerce employed a device, scheme or artifice to defraud Plaintiff, and made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, without limitation, by making the statements and omissions described in paragraphs 136 and 137 above.

145.     AllianzGI knowingly and intentionally made materially false representations with respect to the investment strategies and algorithms underlying the Allianz 350 Fund, including

36

the statements and omissions described in paragraphs 136 and 137 above. At the time of its

investment, Plaintiff did not know of the falsity of the foregoing statements and omissions.

146.     Had Plaintiff known of the misstatements and omission that infected the

disclosures provided by AllianzGI, it would not have invested in the Allianz 350 Fund.

147.     AllianzGI's misstatements and omissions directly and proximately caused loss to

the Alaska Laborers Plan.

148.     As a direct and proximate result of AllianzGI's material misstatements and

omissions, the Alaska Laborers Plan has suffered a substantial loss in its investment in the

Allianz 350 Fund, and is entitled to damages in an amount to be proven at trial, but in any event

no less than $20 million.

149.     Each Defendant other than AllianzGI is jointly and severally liable with

AllianzGI for all liability described herein because each such Defendant directly or indirectly

controlled AllianzGI.

### COUNT 8
### Violations of the Alaska Securities Act
### (By Alaska Laborers Plan Against All Defendants)

150.     Plaintiff Alaska Laborers Plan hereby re-alleges and incorporates by reference the

proceeding paragraphs.

151.     AllianzGI sold investments in the Allianz 350 Fund to the Alaska Laborers Plans

by means of untrue statements of material fact and omissions to state a material fact without

which the statements made were misleading, including those statements and omissions described

in paragraphs 136 and 137 above.

152.     Accordingly, AllianzGI is liable to the Alaska Laborers Plan for (a) the amount of

such investments plus interest at eight percent (8%) per annum from the dates of such investment

through the date of redemption, costs and attorney fees, minus (b) income received by Plaintiff

on such investments and the value thereof on the date of redemption, plus (c) interest at 8% per annum on the remainder of (a) minus (b) from the date of redemption.

153.     Each Defendant other than AllianzGI is jointly and severally liable with AllianzGI for all liability described in Counts 6 though 8 above because each such Defendant directly or indirectly controlled AllianzGI.

## COUNT 9
## Common Law Fraud
## (By Alaska Laborers Plan Against All Defendants)

154.     Plaintiff Alaska Laborers Plan hereby re-alleges and incorporates by reference the proceeding paragraphs.

155.     AllianzGI intentionally or recklessly made false statements of material fact to the Alaska Laborers Plan, including statements that were misleading due to material omissions, in connection with the Alaska Laborers Plan's investments in the Structured Allianz 350 Fund. Such statements were made with the intent that Plaintiff rely on them, and Plaintiff in fact reasonably relied on such statements in connection with its investments.

156.     AllianzGI's material misstatements caused the Alaska Laborers Plan's losses.  If such statements had been true, the losses would never had occurred.  Alternatively, if the Alaska Laborers Plan had known of their falsity, the subject investments would not have been made.

157.     As a direct and proximate result of AllianzGI's false statements, the Alaska Laborers Plan has suffered substantial damages in an amount to be proved at trial, but in any event no less than $20 million.

## COUNT 10
## Negligent Misrepresentation
## (By Alaska Laborers Plan Against All Defendants)

158.     Plaintiff Alaska Laborers Plan hereby re-alleges and incorporates by reference the proceeding paragraphs.

159.    AllianzGI failed to employ due care when it made the misstatements and omissions described herein.

160.    AllianzGI made such misstatements and omissions knowing that they would be relied on in connection with Plaintiff's investment in the Allianz 350 Fund.

161.    The Alaska Laborers Plan reasonably relied on AllianzGI's misstatements and omissions.

162.    The Alaska Laborers Plan could not have known of the falsity of such misstatements and omissions until after its massive losses were incurred, including because AllianzGI concealed material information.

163.    AllianzGI's false statements and omissions directly and proximately caused the Alaska Laborers Plan's losses. The Alaska Laborers Plan is therefore entitled to damages in an amount to be determined at trial, but in any event no less than $20 million.

## VII.    PRAYER FOR RELIEF

Wherefore, Plaintiffs prays for judgement against Defendants as follows:

1.    A declaration that the Defendant AllianzGI has breached its fiduciary duties to the Alaska Laborers Plan in the manner described herein;

2.    An Order requiring Defendants to pay such amounts to the Alaska Laborers Plan to make the Plan whole for any losses which resulted from AllianzGI's breaches of fiduciary duty;

3.    An Order finding the AllianzGI engaged in prohibited transactions and awarding the Alaska Laborers Plan such relief as the Court deems proper;

4.    An Order required Defendant AllianzGI to disgorge any profits made through the use of assets of the Alaska Laborers Plan.  This includes, but it not limited to, disgorgement of any profits improperly obtained in violation of ERISA §§ 404 and 406;

5.      An Order awarding damages, pre-judgment interest, costs and attorney fees in favor of Plaintiff Alaska Laborers Plan against AllianzGI under the Securities Act, the Exchange Act, the Alaska Securities Act, and common law;

6.      An Order awarding damages in favor of Plaintiff Alaska Laborers Plan against all Defendants other than AllianzGI pursuant to the joint and several liability provisions of the Securities Act, Exchange Act, and Alaska Securities Act, and under common law, all as described above;

7.      An Order awarding pre- and post-judgment interest to Plaintiffs;

8.      The costs and expenses of this suit, including expenses for expert witnesses and reasonable attorneys' fees pursuant to ERISA § 502(g)(1), 29 U.S.C. §1132(g)(1) and the Court's inherent equitable authority and powers;

9.      An Order awarding Plaintiff any equitable, injunctive or other further relief as the Court may deem just and proper.

## VIII.   JURY DEMAND

Plaintiffs demand a trial by jury as to all issues so triable.

DATED:      New York, New York
            March 3, 2021

KELLER ROHRBACK L.L.P.


By: *s/ David S. Preminger*
    David S. Preminger
    1140 Sixth Avenue, 9th Floor
    New York, NY 10036
    Tel.: (646) 380-6690
    Fax: 646) 380-6692
    dpreminger@kellerrohrback.com

Erin M. Riley*
eriley@kellerrohrback.com
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: 206-623-1900
Fax: 206-623-3384

Jeffrey Lewis*
jlewis@kellerrohrback.com
180 Grand Avenue, Suite 1380
Oakland, CA 94612
Tel.: (510) 463-3900
Fax: (510) 463-3901

Gary A. Gotto*
ggotto@kellerrohrback.com
3101 N. Central Ave., Suite 1400
Phoenix, AZ. 85012
Tel.:  (602) 230-6322
Fax:  (602) 230-6362

***Attorneys for Plaintiffs***

***\*Motions for Admission Pro Hac Vice
forthcoming***